UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RICHARD BUGMAN, JR.,

      Plaintiff,

v.

THE CITY OF TONAWANDA, NEW YORK, *et al.*,

      Defendants.

21-CV-313-LJV-MJR
DECISION & ORDER

---

On February 26, 2021, the plaintiff, Richard Bugman, Jr., commenced this action under 42 U.S.C. § 1983 and New York State law. Docket Item 1. The complaint alleges that the defendants—the City of Tonawanda, the Town of Colonie, and various Tonawanda and Colonie police officers—violated Bugman's constitutional rights and New York State law when Tonawanda police officers pulled him over as he was driving a rental car.[1] *Id.* After the Colonie defendants[2] moved to dismiss the complaint, Bugman filed an amended complaint on June 16, 2021. Docket Items 12, 19. The Colonie defendants renewed their motion to dismiss two days later, Docket Item 20, and

---

[1] Bugman originally brought claims against the Hertz Corporation, the owner of the rental car Bugman was driving at the time of the stop, and its employees. Docket Item 1. But Bugman voluntarily dismissed those claims on March 25, 2021. Docket Item 5.

[2] The Colonie defendants are the Town of Colonie and Colonie police officers Jonathan M. Teale and Kevin Terry. Docket Item 19.

the Tonawanda defendants[3] then moved for judgment on the pleadings on July 23, 2021, Docket Item 28.

In the meantime, on April 19, 2021, this Court referred this case to United States Magistrate Judge Michael J. Roemer for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B).  Docket Item 13.  After the Colonie defendants' and the Tonawanda defendants' motions were fully briefed, see Docket Items 20, 23, 27, 28, 30, 33, Judge Roemer heard oral argument on both motions in September 2021, see Docket Item 34.  The parties then submitted additional post-argument briefing.  Docket Items 35-40.

On March 4, 2022, Judge Roemer issued a Report and Recommendation ("R&R") finding that both motions should be granted and the amended complaint dismissed.  Docket Item 43.  In the alternative, Judge Roemer recommended dismissing all of Bugman's claims on the merits except his negligence claim against the Colonie defendants and declining to exercise supplemental jurisdiction over that claim.  Id. at 35.

Bugman and the Tonawanda defendants objected to the R&R on April 21, 2022.  Docket Items 46, 47.  Bugman says that Judge Roemer erred in recommending that his section 1983 false arrest/false imprisonment and unreasonable search claims be dismissed.  Docket Item 46.  Bugman also says that because those claims should proceed, his section 1983 failure-to-intervene claim and his state law assault and battery claims should proceed as well.[4]  Id.  The Tonawanda defendants say that this

---

[3] The Tonawanda defendants are the City of Tonawanda and Tonawanda police officers William Strassburg, Nathan Schultz, Kyle Gallivan, Robert Clontz, and Fredric Foels.  Docket Item 19.

[4] Bugman did not object to Judge Roemer's recommendation to grant the Colonie defendants' motion to dismiss.  This Court therefore need not review that portion of the R&R.  See Thomas v. Arn, 474 U.S 140, 149-50 (1985).  In any event, this

2

Court should accept Judge Roemer's recommendation to dismiss Bugman's federal claims but argue "in an abundance of caution" that this Court should dismiss Bugman's negligence claim on the merits rather than decline to exercise supplemental jurisdiction over it. Docket Item 47. The parties responded to each other's objections on May 17 and May 20, 2022, Docket Items 48, 49, but neither side filed a reply.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the R&R; the record in this case; the objections and responses; and the materials submitted to Judge Roemer. Based on that *de novo* review, the Court accepts in part and respectfully rejects in part Judge Roemer's recommendations. Bugman's section 1983 false arrest/false imprisonment, unreasonable search, and failure-to-intervene claims against Tonawanda police officers Nathan Schultz, Kyle Gallivan, and Robert Clontz, as well as his battery and assault claims against those defendants, may proceed. Bugman's remaining claims are dismissed.

---

Court agrees with Judge Roemer that Bugman's claims against the Colonie defendants should be dismissed.

## **FACTUAL BACKGROUND**[5]

On February 12, 2020, Bugman and his family rented a Chrysler minivan from the Buffalo International Airport Dollar Rent-A-Car, which is owned by Hertz. Docket Item 19 at ¶¶ 30-31. Bugman and his family then drove the car to Orlando, Florida, for a family vacation. *Id.* at ¶¶ 34-35. "After a pleasant and uneventful week in Orlando," Bugman and his family drove back to Buffalo on February 22, 2020. *Id.* at ¶ 37.

The following afternoon, as Bugman was driving to the Buffalo airport to return the van, Tonawanda police officer Nathan Schultz "pulled over [] Bugman on the Twin Cities Memorial Highway." *Id.* at ¶¶ 41, 45. Bugman sat in his car for about fifteen minutes without any further explanation about why he was stopped. *Id.* at ¶¶ 48-56. In the meantime, Kyle Gallivan and Robert Clontz, two other Tonawanda police officers, arrived on the scene "with lights blazing and sirens blaring" and "boxed [Bugman] in." *Id.* at ¶¶ 51-53.

Schultz then began to "scream" demands at Bugman over his loudspeaker. *Id.* at ¶¶ 54-56. Bugman complied with those demands, exited the rental car "with his hands up and [his] wallet and license in his hands," and "walk[ed] backwards towards the officers." *Id.* at ¶¶ 59, 64. "During this time," Schultz "pointed his handgun at []

---

[5] The Court assumes the reader's familiarity with the facts alleged in the amended complaint, Docket Item 19, and Judge Roemer's analysis in the R&R, Docket Item 43. Accordingly, the Court provides only a brief recitation of the facts relevant to the parties' objections. On a motion for judgment on the pleadings under Rule 12(c), as on a motion to dismiss under Rule 12(b), the court "accept[s] all factual allegations in the complaint as true and draw[s] all reasonable inferences in [the] plaintiff's favor." *In re Thelen LLP*, 736 F.3d 213, 218 (2d Cir. 2013).

4

Bugman's head."  *Id.* at ¶ 60.  After Bugman was handcuffed, the officers "told him that he was driving a stolen vehicle."  *Id.* at ¶ 65.

That was incorrect.  Two days before Bugman was pulled over, a Hertz employee reported to the Town of Colonie Police Department that a white Chrysler Pacifica had been stolen.  *Id.* at ¶¶ 66-68.  That white van—the same make and model as Bugman's black rental van—had license plate number JBE1561, very similar to the JBE1516 license plate number on Bugman's rental van.  *Id.* at ¶ 66.  But "either Hertz reported . . . the wrong license plate number for the stolen vehicle" to the Town of Colonie Police Department or the "the Town of Colonie Police Department entered the wrong license plate number on the incident report."  *Id.* at ¶ 102.  So "the vehicle reported stolen by Hertz" on the Colonie incident report "was a 2019 white Chrysler Pacifica[ with] license plate number JBE1516," rather than its correct license plate number of JBE1561.  *Id.* at ¶ 102.

As a result of that error, the license plate number Hertz reported for the stolen white Chrysler van matched the actual license plate number on the black Chrysler van that Bugman was driving.[6]  And according to Schultz, "the plate reader in his vehicle alerted him that the Chrysler minivan driven by [] Bugman was stolen when [he] passed by."  *Id.* at ¶ 70.  Schultz then "manually entered into the stolen car system license plate number JBE1516"—in other words, the license plate number on Bugman's car.  *Id.* at ¶ 71.  That "showed that the license plate matched the license plate of the stolen vehicle."  *Id.*

---

[6] As set forth below, *see infra* at 9 n.11, Bugman disputes this characterization.

5

Bugman, who therefore had been detained due to what we now know was a typo, tried to explain to the officers that he had "rented the Chrysler minivan from Hertz a week before[] and that the rental agreement was in the glove compartment." *Id.* at ¶ 72. But the officers "made no immediate attempt to verify what [] Bugman had told them." *Id.* at ¶ 73. Instead, they moved Bugman—now handcuffed—to the backseat of Schultz's police car. *Id.* at ¶ 74.

"At some point while [] Bugman was in the back of the police vehicle, the [o]fficers requested permission to search the vehicle for the rental agreement." *Id.* at ¶ 83. Bugman gave them permission to "search the glove compartment[] only." *Id.* at ¶ 84. But the officers instead proceeded to "t[ear] apart the vehicle and search[] every inch of the [rental van]," even the "spare tire compartment." *Id.* at ¶¶ 85-86. "The [o]fficers did not find any evidence of illegal activity in the Chrysler minivan, but [they] did find the rental agreement in the glove compartment just as [] Bugman told [them they would]." *Id.* at ¶ 88.

At some point during this investigation, Schultz "contacted the Town of Colonie Police Department and spoke with" a Colonie police investigator "for a very long time." *Id.* at ¶¶ 78-80. Ultimately, the investigator and the officers "agreed to release [] Bugman from custody." *Id.* at ¶ 81. By the time he was released, Bugman had been handcuffed for about thirty minutes. *Id.* at ¶ 82. Bugman, who was "[f]urious" about the encounter, then returned the car to the airport without further incident. *Id.* at ¶¶ 89, 92.

## LEGAL PRINCIPLES

The standard for deciding a Rule 12(c) motion is "the same standard [that applies] to dismissals pursuant to Rule 12(b)(6)." *L-7 Designs, Inc. v. Old Navy, LLC*,

6

647 F.3d 419, 429 (2d Cir. 2011) (alterations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

### I. FALSE ARREST/FALSE IMPRISONMENT CLAIM[7]

Judge Roemer recommended dismissing Bugman's section 1983 claim for false arrest/false imprisonment because the Tonawanda officers had probable cause to arrest Bugman.[8]  Docket Item 43 at 16-22.  "[P]robable cause to arrest is a complete defense

---

[7] Bugman styles this claim as a "violation of the Fourth and Fourteenth Amendment" for "[f]alse [i]mprisonment under 42 U.S.C. § 1983."  Docket Item 19 at 18. Like Judge Roemer, this Court addresses any false imprisonment or false arrest claim together.  *See* Docket Item 43 at 16 n.16 (citing *Solomon v. City of Rochester*, 449 F. Supp. 3d 104, 114 (W.D.N.Y. 2020)).

[8] The parties apparently do not dispute that Bugman was intentionally confined without his consent and was conscious of that confinement.  In other words, except for the issue of whether Bugman's arrest was privileged, the parties do not contest that the other elements of a false arrest/false imprisonment claim are satisfied here.  So this Court, like Judge Roemer, considers only whether Bugman's "confinement was . . . privileged"—i.e., whether the officers had probable cause to detain Bugman.  *See Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012).

7

to a claim of false arrest."⁹  *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999).  "Officers have probable cause to arrest when they 'have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'"  *Id.* (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).

Judge Roemer concluded that the officers lawfully stopped and detained Bugman because there was "probable cause to believe that [he] was driving a stolen vehicle."¹⁰ Docket Item 43 at 20.  Bugman contends that there is a question of fact about whether the officers had probable cause to arrest him because "it is unknown at this stage . . . whether Officer Schultz manually entered the correct license plate number for the plaintiff's rented minivan" into the stolen vehicle database and "it is impossible to know" at this point "if the stolen vehicle alert received by Officer Schultz included information regarding the stolen vehicle's color."  Docket Item 46 at 4.  If Officer Schultz typed in the wrong plate number or knew that the stolen vehicle was white and therefore could not

---

⁹ The Tonawanda defendants also argue that Bugman's stop was "at most[] an investigative detention under *Terry v. Ohio*, 392 U.S. 1 (1968)," and therefore was justified by reasonable suspicion.  Docket Item 49 at 15.  But Bugman was directed out of his car at gunpoint, handcuffed, and placed in the backseat of a police vehicle.  That is enough to allege that the detention was more than a *Terry* stop.  *See Grice v. McVeigh*, 873 F.3d 162, 167 (2d Cir. 2017) ("Handcuffing is ordinarily not incident to a *Terry* stop, and tends to show that a stop has ripened into an arrest."); *see also Maresca v. Bernalillo County*, 804 F.3d 1301, 1309 (10th Cir. 2015) ("The use of firearms, handcuffs, and other forceful techniques generally suggests an arrest." (internal quotation marks omitted)).

¹⁰ Operating a stolen vehicle is prohibited under New York law.  *See, e.g.*, N.Y. Penal Law § 165.05 ("A person is guilty of unauthorized use of a vehicle in the third degree when[, k]nowing that he does not have the consent of the owner, he takes, operates, exercises control over, rides in or otherwise uses a vehicle.").

have been the black van Bugman was driving, Bugman reasons, then Schultz would not have had probable cause to arrest.[11]  *See id.*

Accepting all Bugman's allegations as true and drawing all reasonable inferences in his favor at this point, this Court concludes that he has stated a viable claim for false arrest/false imprisonment.  By Bugman's account, he complied with the officers' demands after he was stopped and "told [them] that he [had] rented the Chrysler minivan from Hertz a week before[] and that the rental agreement was in the glove compartment."  Docket Item 19 at ¶ 72.  Instead of following up on that information by simply checking the glove compartment, however, the officers "made no immediate attempt to verify what [] Bugman had told them" and proceeded with their investigation.  *Id.* at ¶¶ 73-74.  And for some thirty minutes, Bugman sat "handcuffed [] in the back of

---

[11] Bugman's first contention—that his amended complaint could be read to imply that Schultz manually entered the *incorrect* license plate number into the stolen vehicle database—is without merit.  At various points in the amended complaint, Bugman alleges that Schultz entered the *correct* license plate number—the one on Bugman's van—which matched the incorrectly entered license plate number in the database.  *See, e.g.*, Docket Item 19 at ¶¶ 71 ("Officer Schultz [] claims in the police report to have manually entered into the stolen car system license plate number JBE1516, which of course showed that the license plate matched the license plate of the stolen vehicle."), 95 ("Bugman's life was put at risk because of the . . . negligence of Hertz and/or the Town of Colonie Police Department who reported and/or entered into the system the wrong license plate number."), 102 ("[W]hen reviewing the Town of Colonie incident report . . . the vehicle reported stolen by Hertz was a 2019 white Chrysler Pacifica, license plate number JBE1516."), 103 ("[E]ither Hertz reported to the Town of Colonie Police Department the wrong license plate number for the stolen vehicle, or the Town of Colonie Police Department entered the wrong license plate number on the incident report."); *see also id.* at ¶ 183 (bringing negligence claim against the Colonie defendants for their "failure to correctly enter into the report the license plate number associated with the allegedly stolen vehicle").  And Bugman cannot ask this Court to accept those explicit allegations in his amended complaint as true while arguing that the factual allegations in his briefs actually tell the correct story.

the police vehicle" as the officers searched the van, checked the glove compartment, and ultimately determined that Bugman's story was true. *Id.* at ¶¶ 82-83, 85.

So by Bugman's telling, the Tonawanda officers apparently had information at their fingertips that could and would have dispelled probable cause for his arrest and confinement but failed to adequately act on it. That is sufficient to state a false arrest/false imprisonment claim. *See Feliz v. City of New York*, 2022 WL 446043, at *5 (S.D.N.Y. Feb. 14, 2022) (denying motion to dismiss where the plaintiff "adequately alleged that [the d]efendants' 'failure to perform the simple task of checking' exculpatory evidence available to them dispelled probable cause to arrest him" (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 208 (2d Cir. 2007)); *see also Schwartz v. Marcantonatos*, 567 F. App'x 20, 23 (2d Cir. 2014) (summary order) (finding that "the officers had neither probable cause nor arguable probable cause" where "the officers failed to consider the honest alternative" for the arrestee's behavior); *Maresca*, 804 F.3d at 1311 ("Even after stopping [the plaintiffs], [the officer] could have gleaned readily available exculpatory evidence by interviewing the[m], considering [their] specific, repeated requests to recheck their license plate and the fact that all of the[m] were fully compliant and showed no indicia of any risk to officer safety[] . . . ."); *cf. Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 295 (S.D.N.Y. 2015) ("[A]t the point that the [d]efendant [p]olice [o]fficers allegedly knew they were searching the wrong location, the seizure of [the plaintiff] was no longer privileged . . . ."). In other words, even if the officers were justified in pulling Bugman over, Bugman's explanation of his innocence could have easily been confirmed by the rental agreement in the glove compartment, thus rendering his continued confinement unjustified. *See generally Feliz*, 2022 WL

446043, at *7 ("[T]he Second Circuit has repeatedly held, across a variety of contexts, that even when there is initial probable cause, an officer may not disregard available exculpatory evidence that could dispel probable cause.").

Judge Roemer correctly noted that "officers are entitled to reasonably rely on the reports of information contained in police databases to establish probable cause to arrest or search," even when that "information [is] later revealed to be mistaken." Docket Item 43 at 20 (citing *Pierre v. City of New York*, 2019 WL 7293390 (E.D.N.Y. Dec. 30, 2019); *Paige v. N.Y.C. Police Dep't*, 2017 WL 1214425 (E.D.N.Y. Mar. 31, 2017); *Pittman v. City of New York*, 2014 WL 7399308 (E.D.N.Y. Dec. 30, 2014); *Apostol v. City of New York*, 2014 WL 1271201 (E.D.N.Y. Mar. 26, 2014)).  And the Tonawanda defendants argue that "the Second Circuit's decision in *Pierre*[] . . . is dispositive" because the match between Bugman's license plate and the license plate in the stolen vehicle database "was sufficient to establish that there was arguable probable cause for the [] stop and detention."  Docket Item 49 at 7-8.

The Tonawanda defendants are correct that there was at least arguable probable cause to pull Bugman over in the first instance.  In *Pierre*, the court granted summary judgment on false arrest and unreasonable search claims, finding that the defendant-officers were entitled to qualified immunity because they reasonably relied on an inaccurate alert in the New York Statewide Police Information Network indicating that the plaintiff's car was stolen.[12]  But in that case, the plaintiff did not argue that he provided any exculpatory information at the time of the vehicle stop that might have

---

[12] The Second Circuit affirmed on appeal.  *See Pierre v. City of New York*, 860 F. App'x 14 (2d Cir. 2021) (summary order).

11

undermined the officers' probable cause.  *See Pierre*, 2019 WL 7293390, at *5 (rejecting the plaintiff's arguments that he was arrested "because of a police conspiracy to harass him" and because of "fabricated evidence").  Here, Bugman not only explained why he was innocent shortly after he was pulled over but pointed the officers to immediately available documentation proving what he said.  So while *Pierre* suggests that stopping Bugman was privileged even if in error, it does not suggest that the privilege extended to holding him after the arresting officers should have known that they made a mistake.

Nor are the Tonawanda defendants entitled to qualified immunity on this motion for judgment on the pleadings.[13]  "In determining whether an officer is entitled to qualified immunity for a false arrest claim," a court must "examine whether there was arguable probable cause."  *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010) (internal quotation marks omitted).  "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  *Id.*

---

[13] The Tonawanda defendants argue that Bugman "d[id] not offer any specific objection to [] Judge Roemer's [] recommendation that [Bugman's false arrest/false imprisonment] claim should be dismissed because the Tonawanda Defendants are entitled to qualified immunity."  Docket Item 49 at 9.  Because Bugman objected to Judge Roemer's entire recommendation for his false arrest/false imprisonment claim and argued that "it would [have been] unreasonable as a matter of law" for the Tonawanda defendants to arrest him, this Court reviews Judge Roemer's qualified immunity determination *de novo*.  But Bugman is advised that in the future, any objection must "*specifically identify* the portions of the proposed findings and recommendations to which [an] objection is made and the basis for each objection."  L. R. Civ. P. 72(b) (emphasis added).  And if there is confusion about what exactly is objected to, Bugman would do well to take the opportunity to file a reply brief to rebut any argument that he did not object or to clarify any confusion about his objection.

Accepting Bugman's allegations as true, qualified immunity is not appropriate at this stage of the proceedings. Bugman says that he informed the officers about the valid rental agreement in the glove compartment that would have proven his lawful use of the vehicle. Docket Item 19 at ¶ 72. But instead of checking the glove box to see whether what Bugman said was true, the officers "placed [] Bugman in the back of [the] police vehicle while he was still handcuffed" and searched the van. *See id.* at ¶¶ 73-74, 83-88. "[T]he Second Circuit has repeatedly held, across a variety of contexts, that even when there is initial probable cause, an officer may not disregard available exculpatory evidence that could dispel probable cause." *Feliz*, 2022 WL 446043, at *7. And that is exactly what Bugman alleges the Tonawanda officers did here: Bugman says that by failing to verify his story and check the glove compartment, the officers unreasonably ignored readily available exculpatory evidence.

In light of those allegations and the posture of this case, qualified immunity is inappropriate at this time. *See id.* (denying qualified immunity on a motion to dismiss because "[b]y refusing to consider th[e] available exculpatory evidence, [the d]efendants are alleged to have acted in an objectively unreasonable fashion"); *see also Pourkavoos v. Town of Avon*, 823 F. App'x 53, 59 (2d Cir. 2020) (summary order) ("[A]sserting qualified immunity as a defense in the earliest stages of litigation, before development of a relevant factual record, usually fails to result in dismissal of the complaint." (citation omitted)); *id.* ("[The Second Circuit] has admonished defendants moving to dismiss a suit by reason of qualified immunity that they would in almost all cases be well advised to move for summary judgment, rather than for dismissal under Rule 12(b)(6) or 12(c)." (alterations and internal quotation marks omitted)). So for the same reasons that

Bugman has stated a viable false arrest/false imprisonment claim, he has pleaded sufficient facts to overcome the Tonawanda defendants' motion for judgment on the pleadings based on qualified immunity.

For all the reasons stated above, this Court finds that Bugman has stated a viable false arrest/false imprisonment claim.

## II.   UNREASONABLE SEARCH CLAIM

Judge Roemer also recommended dismissing Bugman's unreasonable search claim.  Docket Item 43 at 22-26.  More specifically, Judge Roemer concluded that the Tonawanda officers had probable cause to search the entire car under the automobile exception to the Fourth Amendment.  *Id.*  Bugman objects and argues that "the search of the entire vehicle was unnecessary because (1) [Bugman] told the officers that the rental agreement was in the glove compartment before they searched the vehicle, (2) the rental agreement was, indeed, found in the glove compartment, and (3) the rental agreement was all the evidence needed by the officers to determine whether [Bugman] was driving a stolen vehicle."  *Id.*

This Court agrees that Bugman has stated a viable Fourth Amendment unreasonable search claim for the same reasons outlined above.  Bugman says that the officers searched his vehicle after facts that would have dispelled probable cause—that is, facts showing that Bugman was the lawful driver of the vehicle—were available to them.  So while "officers may conduct a warrantless search of [an entire] vehicle" under the automobile exception to the warrant requirement "if they have probable cause to believe it contains contraband or other evidence of a crime," see *United States v. Arias*, 2019 WL 1274954, at *7 (S.D.N.Y. Mar. 20, 2019) (internal quotation marks omitted),

that only begs the question of whether there was probable cause to justify the search here. Because Bugman has sufficiently alleged that when the officers searched the vehicle, they lacked probable cause to believe that it was stolen, he has stated a viable section 1983 claim for an unreasonable search. And for similar reasons, this Court concludes that the defendants are not entitled to qualified immunity at this stage.[14] Bugman's unreasonable search claim therefore may proceed.

### III.  FAILURE-TO-INTERVENE CLAIM

Because Judge Roemer concluded that Bugman's constitutional claims lacked merit, he also recommended dismissing Bugman's failure-to-intervene claim. Docket Item 43 at 26. Bugman argues that if this Court "find[s] that [his amended] complaint alleged a plausible violation of his Fourth Amendment rights, . . . then it similarly should find that the [amended] complaint plausibly alleged a failure-to-intervene claim." Docket Item 46 at 8 n.3. This Court agrees.

"An officer can be held liable under [section] 1983 for 'the preventable harm caused by the actions of the other officers where that officer observes or has reason to know that: (1) excessive force is being used, (2) a citizen has been unjustifiably arrested, or (3) any constitutional violation has been committed by a law enforcement official.'" *Kayo v. Mertz*, 531 F. Supp. 3d 774, 799 (S.D.N.Y. 2021) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). "'For liability to attach' for failure to

---

[14] In their motion for judgment on the pleadings, the Tonawanda defendants argued that they were entitled to qualified immunity because the officers "reasonably relied on the information in the database which informed them that [Bugman's] vehicle was stolen." Docket Item 28-4 at 16. But for the reasons stated above, that misses the point and Bugman has sufficiently alleged that the officers' actions were unreasonable.

intervene, 'there must have been a realistic opportunity to intervene to prevent the harm from occurring.'" *Id.* (alterations omitted) (quoting *Anderson*, 17 F.3d at 557). "Where the officer is a direct participant in the allegedly unlawful conduct," however, "the failure to intervene theory of liability is inapplicable." *Sanabria v. Detective Shawn Tezlof*, 2016 WL 4371750, at *5 (S.D.N.Y. Aug. 12, 2016).

For all the reasons stated above, Bugman has adequately alleged false arrest/false imprisonment and unreasonable search claims. And he alleges that officers Schultz, Gallivan, and Clontz were present when he was handcuffed and while the search was conducted. *See, e.g.*, Docket Item 19 at ¶¶ 73-74, 85-88. His failure-to-intervene claim therefore may proceed as well.[15] Moreover, while Bugman cannot hold officers liable both for the allegedly unconstitutional conduct itself and for failing to intervene to prevent that conduct, he can proceed on alternative theories at this stage.[16]

---

[15] In their motion for judgment on the pleadings, the Tonawanda defendants primarily argued that Bugman's failure-to-intervene claim against Schultz, Gallivan, and Clontz should be dismissed because "[Bugman] has not asserted any facts to plausibly allege they had a[] realistic opportunity to intervene and prevent any harm." *See* Docket Item 28-4 at 17. But according to Bugman, he was handcuffed and detained for about thirty minutes while officers searched the rental car after Bugman told them that proof of his legal possession of the vehicle was at their fingertips. That is enough to plausibly allege that the officers had the opportunity to intervene to prevent any harm from occurring. *Cf. Anderson*, 17 F.3d at 557 ("Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.").

[16] In their response to Bugman's objection and in their motion for judgment on the pleadings, the Tonawanda defendants do not focus on whether any failure-to-intervene claim is barred by qualified immunity. *See* Docket Item 49 at 10 (citing Docket Item 28-4; Docket Item 33). For the reasons stated above, this Court finds that Bugman has sufficiently alleged false arrest/false imprisonment and unreasonable search claims. And at this point, it is not clear whether the officers acted unreasonably or should have intervened to stop either the arrest or the search. So qualified immunity is not appropriate for Bugman's failure-to-intervene claim either. *See Colon v. City of Rochester*, 419 F. Supp. 3d 586, 602 (W.D.N.Y. 2019) (denying qualified immunity on a

16

*See Sanabria*, 2016 WL 4371750, at *6 (noting that "[i]f the officer was a direct participant in the excessive force violation, the failure to intervene theory will be inapplicable" but leaving "[t]he determination of who was specifically involved . . . to discovery").

Bugman also brings a failure-to-intervene claim against the City of Tonawanda, Tonawanda Police Chief William Strassburg, and Tonawanda Police Lieutenant Frederic Foels. Docket Item 19 at 21. In his response to the Tonawanda defendants' motion, Bugman conceded that his failure-to-intervene claim against those defendants should be dismissed. *See* Docket Item 30 at 14 n.5. This Court agrees: Bugman does not allege that Strassburg and Foels were even aware of the stop, much less that they had an opportunity to intervene in it, so his failure-to-intervene claim against them is dismissed. And for the reasons set forth below, Bugman's claims against the City of Tonawanda under section 1983 are dismissed as well.

## IV.   REMAINING CLAIMS UNDER SECTION 1983

Judge Roemer recommended dismissing Bugman's excessive force claim, his official-capacity section 1983 claims, and his claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). *See* Docket Item 43 at 10-16, 26-30. Bugman has not objected to those recommendations, and this Court

---

motion to dismiss where "[i]t is not clear at this point whether excessive force was used, and if so, whether [the defendant] could or should have intervened to prevent or stop it").

therefore need not review them.  *See Thomas*, 474 U.S at 149-50.  In any event, this Court agrees with Judge Roemer that those claims cannot proceed.[17]

## V. STATE LAW CLAIMS

### A. Assault and Battery Claims

Because Judge Roemer concluded that Bugman's arrest was lawful, he also recommended dismissing Bugman's assault and battery claims against defendants Gallivan, Clontz, and Schultz.  Docket Item 43 at 30; Docket Item 19 at 24.  Bugman argues that if this Court allows his false arrest/false imprisonment claim to proceed, then his assault and battery claims should proceed as well.  Docket Item 46 at 6 n.2.  In response, the Tonawanda defendants argue that Bugman was not arrested and that, in any event, his arrest was supported by probable cause.

For all the reasons stated above, Bugman has adequately alleged that he was arrested.  *See supra* at 8 n.9.  And Bugman also has stated a viable claim for false arrest/false imprisonment.  Bugman's assault and battery claims therefore may also proceed.  *See Colon*, 419 F. Supp. 3d at 599-600 (allowing assault and battery claims to proceed where the plaintiffs "have stated a facially valid claim for false arrest").

### B. Remaining State Law Claims

Judge Roemer recommended dismissing Bugman's remaining state law claims on the merits.  Docket Item 43 at 30-37.  Apart from his objection to Judge Roemer's

---

[17] As Judge Roemer noted in the R&R, *see* Docket Item 43 at 26-30, Bugman's municipal liability claims against the City of Tonawanda were deficient.  So while Bugman's false arrest/false imprisonment, unreasonable search, and failure-to-intervene claims may proceed against Schultz, Gallivan, and Clontz, his claims against the City of Tonawanda are dismissed.

recommendation on his assault and battery claims, Bugman does not otherwise object to Judge Roemer's conclusion that his state law claims lack merit.[18]  *See* Docket Item 46.  This Court therefore need not review that portion of the R&R, *see Thomas*, 474 U.S. at 149-50, and in any event agrees with Judge Roemer that those claims cannot proceed.

## **CONCLUSION**

For the reasons stated above, this Court accepts in part and rejects in part the R&R, Docket Item 43.  The Colonie defendants' motion to dismiss, Docket Item 20, is GRANTED.  The Tonawanda defendants' motion for judgment on the pleadings, Docket Item 28, is GRANTED in part and DENIED in part.  Bugman's false arrest/false imprisonment, unreasonable search, failure-to-intervene, and assault and battery claims may proceed against defendants Schultz, Gallivan, and Clontz.  His remaining claims are dismissed.  The Clerk of the Court shall terminate all defendants to this case except Schultz, Gallivan, and Clontz.   The case is referred back to Judge Roemer for further proceedings consistent with the referral order of April 19, 2021, Docket Item 13.

---

[18] Bugman does argue, in his response to the Tonawanda defendants' objection, that this Court should decline to exercise supplemental jurisdiction over his state law claims if his federal law claims are dismissed.  *See* Docket Item 48.  But he does not object to Judge Roemer's finding that his other state law claims are deficient or otherwise address why Judge Roemer's conclusions were incorrect.

SO ORDERED.

Dated: August 26, 2022
Buffalo, New York

                                                          ***/s/ Lawrence J. Vilardo***
                                                          LAWRENCE J. VILARDO
                                                          UNITED STATES DISTRICT JUDGE